291 So.2d 782 (1974)
STATE of Louisiana
v.
Robert HARRISON.
No. 53929.
Supreme Court of Louisiana.
February 18, 1974.
Rehearing Denied March 22, 1974.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
Ronald J. Rakosky, Mayer Finkelstein, Parker & Finkelstein, New Orleans, for defendant-appellant.
DIXON, Justice.
Defendant, Robert Harrison, was convicted of armed robbery and sentenced to serve sixty years imprisonment at hard labor. La.R.S. 14:64. He appeals.[1]
The defendant was tried for the July 20, 1970 armed robbery of Judice's Bakery (later renamed Gambino's Bakery) in the City of New Orleans. It was established that on that occasion two men entered the bakery with guns drawn. They announced, "This is a holdup." A saleslady, Mrs. *783 Pearl Marchese, and two patrons of the bakery, Anthony Cefalu and John Neverro, were then robbed. The robbers then fled the store and made good their escape.
At defendant's trial, neither Cefalu nor Neverro was able to identify the defendant as one of the robbers. The State's case therefore rested entirely on the identification of the defendant by Mrs. Marchese.
In its opening statement, the State announced its intention to introduce evidence of another crime to show guilty knowledge, system, intent and identity. Defense counsel objected to any such evidence on grounds of relevancy. When the objection was overruled, defense counsel reserved a bill of exceptions, making a part thereof the entire record in the proceedings.[2]
The evidence of similar acts consisted of the following:
On January 12, 1971 two men entered Gambino's Bakery. The one identified as the defendant doubled up as if in pain. His companion told Mrs. Marchese, the saleslady, that his friend was having cramps, and asked her for assistance. Mrs. Marchese testified that she saw a bulge under the defendant's shirt which looked like a gun. There was no overt act by either person indicating an attempt to rob the store.
She went running into the back to inform her employer, Mr. Warren Gambino, that she thought they were being robbed. Mr. Gambino then armed himself with a pistol and went into the store. Mr. Gambino and Mr. Karl Sauviac, the manager of the bakery, each testified that the defendant straightened up, reached across the counter and removed two cartons of ice cream and that when challenged by Mr. Gambino the defendant dropped the ice cream on the floor and fled along with his companion. Mr. Gambino followed the men outside. After the men entered their car the defendant removed a gun from his shirt, pointed it at Mr. Gambino and said, "I got one too. I didn't get you this time." The two men then fled in the automobile. Mr. Gambino was able to get the license number of the vehicle, except for one digit. From this partial license number, the police were able to locate the defendant and his companion, Paul Honore.
Many recent decisions of this court have dealt with the admissibility of evidence of other crimes in a criminal prosecution under La.R.S. 15:445-15:446. See, e. g., State v. Jordan, 276 So.2d 277 (1973); State v. Prieur, 277 So.2d 126 (1973); State v. Moore, 278 So.2d 781 (1973); State v. Jefferson, 284 So.2d 882, decided October 29, 1973; State v. Grant and Dixon, 295 So.2d 168, decided October 29, 1973; State v. Pettle, 286 So.2d 625, decided December 5, 1973.
La.R.S. 15:445-15:446 provide:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
We held in State v. Moore, supra, that evidence of other crimes under these statutes is admissible only where relevant, *784 and then only when their probative value outweighs their prejudicial effect. 278 So.2d at 785.
In the case at bar, the perpetrators of the July 20 robbery entered the bakery with guns drawn and announced, "This is a holdup." Therefore, there was no need to use evidence of other crimes to prove guilty knowledge or intent. State v. Jordan, supra; cf. State v. Pettle, supra.
With regard to "system" or modus operandi, it is sufficient to note that there was no similarity between the two incidents. In the July 20 incident, the perpetrators entered the bakery with guns drawn and immediately announced that, "This is a holdup." There was no attempt at stealth, subterfuge or deception. From the recital of the circumstances of the January 12 incident it is clear that the two incidents were totally dissimilar, as far as modus operandi is concerned. See, State v. Grant and Dixon, supra; State v. Spencer, 257 La. 672, 243 So.2d 793 (1971); State v. Montegut, 257 La. 665, 243 So.2d 791 (1971). Thus, the evidence of the fact that defendant participated in the January 12 incident does not prove that he committed the earlier crime and is simply not relevant to the issue of identity. State v. Moore, supra.
Although the fact that defendant committed the second offense is not relevant to an issue in the case at bar, we are confronted with the question of whether testimony as to the details of that offense may be properly adduced where it is incidental to identification of the defendant as perpetrator of the first offense by an eyewitness.
The State contends that Mrs. Marchese was unsure of her identification of the defendant as the perpetrator of the July 20 robbery until she saw him again in January, thus making the details of the January offense admissible as the circumstance under which a definite identification was made.
Assuming, arguendo, that this is the case, we nevertheless must reverse the conviction. We note that Mrs. Marchese had limited knowledge of the January 12 incident. She saw the men enter the store, she recognized the defendant as the perpetrator of the robbery of July 20, she saw a gun in his waistband and fearing another robbery went into the back of the bakery, where she remained, to inform her employer of her fear. The more prejudicial details of the second occurrence, which were outside the knowledge of Mrs. Marchese and hence not germane to her identification of the defendant, were provided by five other witnesses who were not connected with the offense for which defendant was being tried. It was highly improper for the prosecution to parade before the jury the five additional witnesses to prove the defendant's complicity in the January 12 incident, as this added nothing to the question of ability of the witness, Mrs. Marchese, to identify the defendant as the perpetrator of the July 20 robbery. This evidence served only to place, to the fullest possible extent, the bad character of the defendant before the jury. As such its admission is reversible error. La.R.S. 15:481; State v. Moore, supra.
For the reasons assigned, the conviction and sentence are reversed and the case is remanded to the trial court for further proceedings not inconsistent with the views expressed herein.
CALOGERO, J., concurs with written reasons.
SANDERS, C. J., dissents and assigns reasons.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents.
CALOGERO, Justice (concurring).
I concur in the majority opinion because I agree that proof of the January 12, 1971 incident at the same bakery was not relevant to any matter at issue in connection *785 with trial of the July 20, 1970 armed robbery. I find admission of this evidence particularly prejudicial in this case in light of the otherwise scant proof of the identity of the defendant as perpetrator of the charged crime. The only identifying witness to the crime with which defendant was charged (who incidentally testified she had been robbed on ten different occasions) made several implausible statements.
She testified that she knew the defendant, Robert Harrison as a customer who had frequented the bakery prior to the June, 1970 robbery. Notwithstanding this, she was unable, on and following the June 20, 1970 robbery, to identify the robber or recall that she had ever seen him until seven months later on January 12, 1971 when Harrison appeared at the bakery and participated in an incident which the state described as an attempted armed robbery.
The witness' testimony in numerous other instances was suspect,[1] including her certainty that the robber had a large red and blue tattoo of a naked lady on his forearm. Defendant Harrison displayed to the jury that he had no such tattoo on his arms.
I do not set forth the foregoing observations in an effort to judge guilt or innocence for that is exclusively the province of the jury. Our inquiry is properly directed only to whether error (probably constituting in this instance a substantial violation of a Constitutional or statutory right) was committed in the introduction, over objection, of the irrelevant evidence of the second incident. And, of course, we have found such error, requiring reversal. I simply set forth these observations to point out that the error in admitting evidence of the described second "armed robbery" was surely not insubstantial.
SANDERS, Chief Justice (dissenting).
On July 20, 1970, two men entered Gambino's Bakery (then Judice's) on North Claiborne Street in New Orleans and at gun-point forced Pearl Marchese, an employee of the bakery, to give them the money from the cash register. They also took the money of several customers, who were in the bakery. During the robbery, one of the robbers stated, "This is a holdup."
On January 12, 1971, about six months later, two men entered the same bakery. Mrs. Marchese immediately recognized the defendant Harrison as one of the July robbers and saw a gun partially concealed in his shirt. Realizing that another robbery was about to take place, Mrs. Marchese ran into the back of the bakery and alerted Warren Gambino, Jr., the owner, and Karl Sauviac, the manager. Gambino placed a pistol half way in his pocket, and he, accompanied by Sauviac, went to the front of the store.
When Harrison saw Gambino's gun, he jumped upon a counter, opened a freezer door, took out a bag containing a quantity of ice cream, and started for the door. Upon seeing this, Gambino reached for his gun. Harrison dropped the ice cream and ran to a car parked in front of the bakery. As he and his companion drove away, Harrison pointed his pistol and said, "I got one, too. I didn't get you this time." Gambino took the license number of the car. After the police traced the license number, they arrested Paul Honore, the owner of the car, and Harrison.
Later, Warren Gambino, Jr., Karl Sauviac, and Pearl Marchese identified Harrison in a police line-up.
Harrison was tried and convicted of the Gambino Bakery robbery on July 20. During the Course of the trial, evidence of the January robbery was introduced. The trial judge instructed the jury that evidence of the January robbery was admitted only to establish guilty knowledge, intent, and system.[1]
*786 The majority holds that when the defendant in an armed robbery case is shown to have said, "This is a holdup," or, presumably, words of similar import, no evidence of other robberies can be admitted to prove intent. In my opinion, the holding is incorrect for at least two reasons.
First, it places this Court in the position of monitoring the evidence and ruling before the State's case has been completed that the State needs no further evidence to satisfy the jury beyond a reasonable doubt of the essential intent. Traditionally, the quantum of evidence on an essential element has been a matter for the District Attorney, not for this Court on appeal. As we held in State v. St. Amand, La., 274 So.2d 179 (1973), once the relevance and probative nature of the evidence have been determined, the Court should not undertake to control the manner of the State's proof.
Second, the holding is contrary to that of several earlier cases in which evidence of other crimes has been admitted to prove intent in armed robbery cases. See State v. St. Amand, supra, defendant, armed with a pistol, commanded "Turn around and don't look at me," before taking money from the victim's wallet; State v. Montegut, 257 La. 665, 243 So.2d 791 (1970) defendant, holding his hand inside his shirt, demanded, "Give me all the money you have in there;" State v. Welch, 250 La. 719, 198 So.2d 902 (1967), an accomplice held a knife on the victim, while defendant told the victim, "Give me all your money, or I'll kill you." [Tr. 31].
See also State v. Frezal, La., 278 So.2d 64 (1973); State v. Spencer, 257 La. 672, 243 So.2d 791 (1971).
In my opinion, under LSA-R.S. 15:445, the evidence of the second robbery was admissible to prove intent.
In the present case, however, there are other independent grounds for the admission of the contested evidence.
Evidence of the January robbery was admissible to show how and when Mrs. Marchese identified the defendant as the perpetrator of the first robbery, with which the defendant is here charged, and how the defendant was traced and apprehended. The evidence of another crime is admissible to aid in establishing identification.
The occurrence outside the bakery was also admissible to show an admission against interest, or inculpatory statement, of the defendant. While pointing his gun at Mr. Gambino, the defendant said, "I didn't get you this time." The statement perhaps is ambiguous. Nonetheless, it is subject to the interpretation that, as contrasted with the first robbery, he was unsuccessful this time. The jury was certainly entitled to hear the evidence, in order to accord it such weight as it deemed appropriate. Under our system, the jury is the sole judge of the facts.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Chief Justice.
NOTES
[1] Defendant reserved three bills of exceptions; however, bills two and three are neither briefed nor argued and are deemed abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
[2] Defense counsel urged his objection and the trial judge retired the jury. The court reporter did not transcribe the arguments of counsel which followed, so it is impossible to determine the full scope of the objection. However, the trial judge treated the objection as general throughout the trial and in per curiam and it is so treated here.
[1] I intend here not to comment upon the veracity of this witness but upon the trustworthiness of her testimony.
[1] During the trial, the defendant admitted that he was a drug addict and had been convicted of several previous felonies.