569 So.2d 650 (1990)
STATE of Louisiana, Appellee,
v.
Broderick Raynard REAVES, Appellant.
No. 21,894-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
*651 Charles A. Smith, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry R. Brown, Dist. Atty., James M. Bullers, Asst. Dist. Atty., Bossier City, for appellee.
Before NORRIS, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
Defendant, Broderick Raynard Reaves, was charged with forcible rape, LSA-R.S. 14:42.1, and found guilty by a jury. After receipt of a presentence investigation report, the trial judge ordered incarceration at hard labor for 25 years. Defendant now appeals and relies upon six assignments of error. Finding no merit to his contentions, we affirm the conviction and sentence.

FACTS
Around 5:00 a.m. on April 26, 1989, defendant approached the home of his next door neighbor, E.A., a 47-year-old single female, and rapped on her bedroom window. After identifying himself, he requested to use her phone, claiming an emergency. Having previously allowed defendant to make calls, and being concerned that defendant's grandmother with whom he resided possibly needed medical assistance, E.A. let him into her home.
*652 Expecting defendant to use the phone in the living room, E.A. returned to her bedroom and sat on her bed. She next noticed defendant in the doorway of the room with a butcher knife in his hand. Holding the instrument aloft, he advanced toward her, warning he would kill her if she shouted. A struggle ensued, during which her hand was cut. Overcoming E.A., defendant used the knife to rip off her shorts and underpants, and then raped her. He left a few minutes later, heading toward his house.
Locking the door behind him, E.A. immediately called her employer, Mrs. Mildred Woodard, advising of the attack and asking that she contact Mark Wise, a Minden police officer and son-in-law of Mrs. Woodard.
After receiving a call at approximately 5:45 a.m., two officers reported to the victim's home. Two other policemen soon arrived, interviewed E.A., collected evidence, and then arrested defendant, who was asleep at his residence. Returning later, the investigating officers searched the grandmother's house pursuant to her written consent. From behind a freezer in the kitchen, they recovered a bloody knife matching the description given by the victim.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant claims the court erred in refusing to allow him to ask the victim if she was a virgin. His attorney stated the purpose of this question as follows:
MR. HARRINGTON: She has alleged that there was a penetration here. I believe that I have a right to determine whether or not she was a virgin, because whether or not she was had an effect on whether or not there was a penetration and what her physical feelings were at the time and I think I'm entitled to know that.
Finding the inquiry did not meet either of the exceptions provided by LSA-C.E. Art. 412, the court sustained the state's objection to the question.
LSA-C.E. Art. 412 provides, in pertinent part:
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
....
F. Past sexual behavior defined. For purposes of this Article, the term "past sexual behavior" means sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged.
Defense counsel's question sought to elicit information concerning the victim's past sexual behavior for reasons other than those sanctioned by statute. Thus, the trial court properly sustained the state's objection.
It cannot seriously be contended that only nonvirgins are capable of recognizing penile penetration. Thus, the chastity of the victim had no bearing on the issue stated by defense counsel. Certainly, the penetration element of the crime could have been explored without resorting to, as intended to be precluded by Article 412, an attack upon the victim's character by subterfuge. Moreover, defendant was allowed considerable latitude in educing details of the rape, including whether or not the victim observed defendant insert his penis, or whether she could have been assaulted by digital penetration.
*653 No error is disclosed; this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
Defendant next contends the lower court erred in admitting hearsay statements made by the victim to her employer and a neighbor. Determining the statements to be excited utterances, the trial judge allowed their introduction.
LSA-C.E. Art. 803 sets forth numerous exceptions to the hearsay rule, one being an excited utterance, defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." LSA-C.E. Art. 803(2). This exception requires an occurrence or event sufficiently startling to render an observer's normal reflective thought processes inoperative. Further, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La. 1978); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989).
Of the many factors that enter into determining whether a declarant was under the stress of an exciting event, probably most important is the time factor. The trial court must decide whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. Additional factors which may indicate that a statement was the result of reflective thought, but do not automatically justify exclusion, are as follows: evidence that the statement was self-serving or made in response to an inquiry; expansion of the excited utterance beyond a description of the event and into past or future facts; and proof that, between the event and the statement, the declarant performed tasks requiring reflective thought processes. State v. Henderson, supra.
Being raped at knife point is certainly an event startling enough to have deprived E.A. of her reflective thought process. Accordingly, it must be determined whether sufficient time had lapsed between the rape and the statements so that her emotional upset would have subsided.
Testimony established that the incident occurred between 5:00 and 5:15 a.m. Within minutes, E.A. called her employer. Crying, she stated that "the Reaves boy" had come to her residence armed with a knife, had "forced himself" on her, and had cut her in the process. As previously stated, two officers reached the house around 5:45 a.m. Shortly thereafter, a neighbor, Mrs. Mattie Flournoy, arrived to find the victim very upset, moaning and crying. E.A. related the event to her and identified defendant as the rapist. Later, between 7:00 and 8:00 a.m., Mrs. Woodard, the employer, drove the victim to the coroner's office for the rape test. During the drive, E.A. recounted the incident in slightly more detail.
No contemporaneous objection arose to testimony of the telephone conversation, which the defense brief admits to have ensued within minutes of the attack. With respect to the statement to Mrs. Flournoy, the trial judge concluded that the assertions transpired under influence of the exciting event. The evidence reasonably supports that factual determination. Less than an hour, probably about 45 minutes, had elapsed between the incident and the statement. Mrs. Flournoy described E.A. as "very upset, and moaning, crying." Arriving at the home after the neighbor, Mrs. Woodard found the victim still nervous, upset, and pacing the floor. Although well acquainted for over 17 years, her employer had never seen the victim cry or become so emotional before, even after the death of her parents.
Two hours or more had passed, however, before the statements were made during the trip to the coroner's office. Considering that factor and that the victim had given detailed statements to the police in the interim, the trial court erred in treating the remarks made in the automobile as excited utterances. Nevertheless, earlier testimony revealed that basically the same story had already been related to Mrs. Flournoy and Mrs. Woodard. On the latter *654 occasion, the victim only added that defendant had knocked on her bedroom window.
An error committed during trial does not warrant the setting aside of a verdict unless it is of such grave import as to give rise to the belief that, except for such error, the results would be different. To require reversal, the error must be substantial. LSA-C.Cr.P. Art. 921; State v. Brumfield, 329 So.2d 181 (La.1976).
Defense counsel ascertained that Mrs. Woodard did not possess independent knowledge of how the rape occurred and was only relating what the victim had told her. The recitation of the statement made during the drive to the coroner's office provided no information concerning the crime which had not previously been testified to by E.A., or already basically related by the employer or the neighbor. Thus, exclusion of the remarks imparted in the automobile would not have changed the verdict. Clearly, the action of the trial court does not warrant reversal.

ASSIGNMENT OF ERROR NO. 3
Defendant next asserts that the trial court erred in allowing the jury to physically examine the victim's blood-stained garments and the butcher knife, claiming that the handling of these served to inflame and unduly prejudice the jury. The prosecutor requested this inspection prior to resting his case.
Highly relevant in assisting to assess the forcible element of the case, these tangible items had been previously introduced into evidence. Once properly admitted, the jury had the right to examine such physical objects. See State v. Carney, 260 La. 995, 257 So.2d 687 (1972). Accord, State v. Deaton, 412 So.2d 586 (1982).
Thus, no prejudice resulted from the trial court permitting the jury to examine the evidence, and this assignment also lacks merit.

ASSIGNMENT OF ERROR NO. 5
By his fifth assignment of error, defendant contends that the evidence did not support the jury verdict. Instead, he maintains the decision was based on inconsistent testimony by E.A. which was insufficient to establish his guilt beyond a reasonable doubt.
The criteria for evaluating sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that all the elements of the crime had been proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Chism, 436 So.2d 464 (La.1983). That standard, initially enunciated in Jackson, and legislatively adopted with the enactment of LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Willis, 446 So.2d 795 (La.App. 2d Cir.1984).
Granted, the victim's testimony comprises the only direct evidence of the rape. Yet it does not stand alone. Instead, it is substantiated by other testimony and physical evidence.
E.A. stated that defendant attacked her with a butcher knife having a tan handle, cut her with it during a struggle, and used it to remove her clothing. These assertions were corroborated by the injury to her hand, which required stitches, and by her bloody, torn panties and shorts.
As soon as defendant left, the victim called her employer, tearfully informing her of the attack and requesting assistance. Mrs. Woodard stated that in the 17 years she had been acquainted with E.A., she had never known her to cry or be so upset. Both Mrs. Flournoy and Mrs. Woodard testified that upon arriving at the victim's house, they found her visibly upset and emotional.
Searching defendant's house for the weapon, officers found a butcher knife matching the description provided by E.A. On the handle of the instrument, laboratory technicians discovered human blood.
During police interrogation, defendant denied going to the victim's house. Not until the state had rested its case, which *655 included testimony that no forensic evidence confirmed a rape, did he admit going to the residence. He then asserted that, on that night, he had desired to call a friend to determine if that individual had arrived home safely after an evening of drinking. Defendant also then conceded that he went to the home armed with a knife, but explained he carried it because his neighborhood was "crack infested." Claiming the knife was visible at all times while in his neighbor's house, he proclaimed that E.A. cut herself while grabbing at the weapon as he tried to leave.
It is not the function of appellate courts to re-evaluate credibility of witnesses and then proceed to overturn factual determinations of guilt. LSA-Const. Art. 5, § 5(C) (1974); State v. Richardson, 425 So.2d 1228 (La.1983); State v. Lard, 568 So.2d 629 (La.App. 2d Cir.1990); see also State v. Chevalier, 458 So.2d 507 (La.App. 4th Cir.1984). It is the province of the jury, and not that of the appellate court, to assess credibility of witnesses. State v. Trosclair, 443 So.2d 1098 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir. 1984), writ denied, 462 So.2d 189 (La.1984).
Comparing the victim's testimony, supported by other witnesses and physical evidence, to that of defendant, a rational trier of fact could easily conclude beyond a reasonable doubt that defendant raped E.A. Indeed, this jury so decided. Where a trier of fact has made a rational credibility determination, an appellate court should not disturb it on review. State v. Mussall, 523 So.2d 1305 (La.1988). This assignment is also without merit.

ASSIGNMENTS OF ERRORS 4 and 6
By these final assignments, defendant first challenges the court's consideration of his cocaine usage in his sentencing, and secondly complains that the sentence is excessive.
In evaluating an assertion of excessiveness of sentence, a two-step process is utilized. First, the record must show that the lower court observed the criteria set forth in LSA-C.Cr.P. Art. 894.1. Here, defendant does not contend that the trial judge failed to satisfactorily apply the guidelines of that provision. Moreover, the record reveals adequate consideration of the relevant factors.
After defendant's arrest, authorities secured from his body those items of evidence normally analyzed by crime labs in rape cases. The resultant report disclosed he had been using cocaine, and defendant questions the court's reference to that information at his sentencing. He points to the fact that, during his testimony, he denied such usage. However, he strangely overlooks that, rather than viewing this as an aggravating factor, the trial court considered the report in mitigation of his criminal behavior. Thus, in effect, the defense assigns error to a mitigating circumstance. Obviously, the assignment lacks merit.
In the second step of our review, we must determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). In determining whether a sentence is grossly disproportionate, the crime and punishment are considered in light of the harm done to society. State v. Barbarousse, 480 So.2d 273 (La.1985). The trial judge has wide discretion in the imposition of a sentence within the statutory limits, and such a sentence should not be set aside as excessive absent an abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
The sentencing judge found defendant to be cold, callous, and devoid of remorse for his criminal conduct. Beguiling *656 E.A., defendant gained entry into her home and raped her, forcing submission with a large knife. Indeed, the trial court concluded that an aggravated rape actually occurred. Although the wound to her hand healed without scarring, the psychological trauma necessitated counseling and medication. The court also observed that, due to the close proximity of her home to that of her attacker, she lives in fear he may harm her again.
Convicted of forcible rape, defendant, age 23, stood exposed to imprisonment at hard labor for a term of not less than five years nor more than forty years, with at least two years to be served without benefit of probation, parole or suspension of sentence. LSA-R.S. 14:42.1. Considering the emotional toll sustained by the victim and defendant's lack of contrition, the trial court clearly did not abuse its discretion in sentencing defendant to 25 years.
We further note that the sentence is illegally lenient in that the sentencing judge failed to specify that any portion of the imprisonment would be served without benefit of probation, parole or suspension of sentence. LSA-R.S. 14:42.1 B; State v. Major, 476 So.2d 540 (La.App. 1st Cir. 1985), modified, 485 So.2d 57 (La.1986). Yet, the state having failed to complain, we are constrained by the holding of the Supreme Court in State v. Fraser, 484 So.2d 122 (La.1986), from acting to correct this obviously illegal sentence.

CONCLUSION
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.